PD-0547-16
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/20/2016 4:31:47 PM
Accepted 6/21/2016 4:22:04 PM
ABEL ACOSTA
CLERK

NO. PD-0547-16
## TO THE COURT OF CRIMINAL APPEALS

_____

| | | |
|---|---|---|
| *EX PARTE* | § | **TEXAS COURT OF** |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **DEREK TY POE** | § | **CRIMINAL APPEALS** |

_____

## PETITIONER/APPELLANT
## DEREK TY POE'S
## PETITION FOR DISCRETIONARY REVIEW

───────────────────────────────────

On Petition For Discretionary Review from the Ninth Court of Appeals; Cause Number 09-15-00373-CR, affirming the denial of habeas corpus in Cause No. 301268-A from the County Court at Law No. 2 of Jefferson County, Texas

T. EDWIN WALKER
State Bar No. 00786324
1020 Bay Area Blvd., Suite 216
Houston, Texas 77058
Tel: (281) 668-9957
Fax: (281) 282-9419
Email: tewalker@walkerbyington.com
ATTORNEY FOR DEREK TY POE

**ORAL ARGUMENT REQUESTED**

FILED IN
COURT OF CRIMINAL APPEALS

June 21, 2016

ABEL ACOSTA, CLERK

# TABLE OF CONTENTS

Table of Contents…………………………………………………………….i

Table of Authorities……………………………………………………….iii

Statement Regarding Oral Argument…………………………………v

Names of All Parties……………………………………………………….vi

Statement of the Case……………………………………………………..1

Procedural History………………………………………………………….2

Issues Presented…………………………………………………………….3

> First Ground for Review: The Ninth Court of Appeals erred in failing to apply the presumption of invalidity to Texas Penal Code Sec. 42.01(a)(8), which is a content-based restriction, and instead applied the usual standard of presumptive validity.

> Second Ground for Review: The Ninth Court of Appeals erred when it held that Texas Penal Code Sec. 42.01(a)(8) was not unconstitutionally overbroad in violation of the First Amendment. This finding was based upon the application of the incorrect presumption of validity instead of the presumption of invalidity.

> Third Ground for Review: The Ninth Court of Appeals erred when it held that Texas Penal Code Sec. 42.01(a)(8) was not void for vagueness in violation of the First Amendment. This finding was based upon the application of the incorrect presumption of validity instead of the presumption of invalidity.

Facts……………………………………………………………………………..4

Argument and Authorities………………………………………………..5

First Ground for Review……………………………………………..8

Second Ground for Review ...................................................13

Third Ground for Review………………………………………..17

Conclusion………………………………………………………………….21

Prayer í í í í í í í í í í í í í í í í í í í í í í í í í í í í .í .22

Certificate of Service í í í í í í í í í í í í í í í í í í í í í í í ...23

Certificate of Compliance í í í í í í í í í í í í í í í í í í í í ...í í 23

Appendix A í í í í í í í í í í í í í í í í í í í í í í í í í .í í 24

# TABLE OF AUTHORITES

Cases

*Ashcroft v. ACLU,* 542 U.S. 656 (2004)………………………..7, 15

*Brandenburg v. Ohio*, 395 U.S. 444 (1969)…………………..… 6

*Brown v. Entertainment Merchants Ass'n*, 564 U.S. ___, 131 S.Ct. 2729 (2011)….7

*Bynum v. State*, 767 S.W.2d 769 (Tex. Crim. App. 1989)………………..15

*Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)………………....6

*Cohen v. California*, 403 U.S. 15 (1971)………………………..… 11

*Ely v. State*, 582 S.W.2d 416 (Tex. Crim. App. 1979)………………… 18

*Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013) …...………….9, 12, 15

*Ex Parte Thompson*, 442 S.W.3d 325 (Tex. Crim. App. 2014)………………………………… v, 6, 7, 8, 10, 12, 13, 16

*Gooding v. Wilson*, 405 U.S. 518, 521-22 (1972)…………………….6

*Grayned v. Rockford*, 408 U.S. 104 (1972) …………....……… 17, 18

*Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983) …………....…… 18, 19

*Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996) ...…………….18, 19, 20, 21

*May v. State*, 765 S.W.2d 438 (Tex. Crim. App. 1989)…………..……… 19

*Morehead v. State*, 807 S.W.2d 577 (Tex. Crim. App. 1991)……..………….6

*New York v. Ferber*, 458 U.S. 747 (1982)………………………….6

*State v. Johnson*, 475 S.W.3d 860 (Tex. Crim. App. 2015) ...……. v, 8, 10, 14, 15

*State v. Rosseau*, 396 S.W.3d 550 (Tex. Crim. App. 2013) …………………9

*Terminiello v.* Chicago, 337 U.S. 1 (1949)……………….....………6

*Texas v. Johnson*, 491 U.S. 397 (1989)………………………....… 11

*Tinker v. Des Moines Independent School District*, 393 U.S. 503 (1969)…….11

*Turner Broadcasting System v. FCC*, 512 U.S. 622 (1994) ...………..…… 12

*United States v. Alvarez*, ___ U.S. ___, 132 S.Ct. 2537 (2012)……………....7

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000)…………..… 7

*United States v. Stevens*, 559 U.S. 460 (2010)……………………..… 15

*United States v. Williams*, 553 U.S. 285 (2008)………………… 6, 14

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 234 (1981)……………………………………………...15

*Virginia v. Black*, 538 U.S. 343 (2003)……………………...5

*Virginia v. Hicks*, 539 U.S. 113 (2003) ………………… 15


Constitutions, Statutes, Codes

House Bill 910, 84th Legislature………………........................11

Texas Penal Code Section 22.02…………………………..…… 16

Texas Penal Code Section 22.05(a)……………………………..…… 16

Texas Penal Code Section 22.05(b)……………………………..…… 16

Texas Penal Code Section 22.07……………………………….…… .16

Texas Penal Code Section 42.01(a)(8)………………………..… *passim*

Texas Penal Code Section 42.11………………………………..…… 10

Texas Penal Code Section 42.12……………………………….…… .16

Texas Penal Code Section 46.02………………………………..…… 11

Texas Penal Code Section 46.03………………………………… .14, 16

Texas Penal Code Section 46.035…………………………...…… 14, 16

Texas Penal Code Section 46.15(b)(6)…………………………… .11

Texas Rule of Appellate Procedure 66.3(b)………………………… 3

Texas Rule of Appellate Procedure 66.3(c)………………………… 4

U.S. Constitution Amendment I………………………………… *passim*

iv

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument before the Court would be greatly beneficial due to the crucial First Amendment application and complexities involved in this case. In light of the action of the 84th Texas Legislature's legalization of the display of visible handguns by individuals who are not law enforcement officers, Texas Penal Code Section 42.01(a)(8) lurks as a legal catch-all for use (or abuse) by any police, prosecutor, or "alarmed" citizen who disagrees with the practice of "open-carry." Texas Penal Code Section 42.01(a)(8) does not serve to protect the people of Texas to any greater degree than other criminal statutes that are currently in effect. The statute's sole purpose is to criminalize protected expressive speech. Further, the Ninth Court's ruling in this matter was based upon its erroneous conclusion that Texas Penal Code Sec. 42.01(a)(8) criminalizes *conduct* and not *speech*. This holding contradicts this Court's recent findings in *Ex Parte Thompson* and *State v. Johnson*, protecting expressive conduct as speech.

# NAMES OF ALL PARTIES

Derek Ty Poe — Petitioner/Appellant

T. Edwin Walker
State Bar No. 00786324
1020 Bay Area Blvd., Suite 216
Houston, Texas 77058

Petitioner/Appellant's Trial and Appellate Counsel

State of Texas — Appellee

Wayln G. Thompson
Jefferson County
District Attorney's Office
1085 Pearl Street, Suite 300
Beaumont, Texas 77701

Appellee's Appellate Counsel

Daniel A Hunt
Cornelius D. Williams
Jefferson County
District Attorney's Office
1085 Pearl Street, Suite 300
Beaumont, Texas 77701

Appellee's Trial Counsel

Hon. Kent Walson, sitting for
Hon. Cory J.H. Crenshaw
Judge Presiding
Jefferson County Court at Law No. 2
1085 Pearl Street
Beaumont, Texas 77701

## NO. PD-0547-16
## TO THE COURT OF CRIMINAL APPEALS

_____

*EX PARTE*                         §    TEXAS COURT OF
                                   §
                                   §
                                   §
                                   §
                                   §
**DEREK TY POE**                   §    CRIMINAL APPEALS

_____

## PETITIONER/APPELLANT
## DEREK TY POE'S
## PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

Petitioner, Derek Ty Poe, by and through his attorney on appeal, T. Edwin Walker, files this petition for discretionary review.

### STATEMENT OF THE CASE

This case is a facial challenge to Texas Penal Code Sec. 42.01(a)(8) on the grounds that it violates the First Amendment to the United States Constitution. Specifically, the statute regulates the expressive conduct of displaying firearms or other deadly weapons and is a content based statute in that it does not prohibit all displays of firearms or other deadly weapons, but only those that are done õin a manner calculated to alarm.ö Because Texas Penal Code Sec. 42.01(a)(8) is a content based restriction on expressive conduct, it is unconstitutionally overbroad in that it

1

prohibits a substantial amount of protected speech. Further, it is unconstitutionally vague because it provides no guidance to actors, law enforcement, or the public as a whole, as to what expressive conduct is considered criminal.

## PROCEDURAL HISTORY

On December 31, 2013, Derek Ty Poe was charged in Cause Number 301268, *State of Texas v. Derek Ty Poe*, with the crime of disorderly conduct by displaying a deadly weapon, namely a firearm, in in a public place a manner calculated to alarm, in violation of Texas Penal Code Section 42.01(a)(8).[1] Derek Ty Poe filed an Application for Pretrial Writ of Habeas Corpus Seeking Relief Due To The Unconstitutionality of Texas Penal Code Section 42.01(a)(8) in Jefferson County Court at Law No. 2.[2] After a hearing on May 20, 2015, the trial court denied his application on August 21, 2015.[3] Petitioner then appealed the trial court's order to the Texas Court of Appeals, Ninth District. The Ninth Court of Appeals issued its judgment affirming the trial court's order on April 20, 2016. No motion for rehearing was filed. The opinion of the Ninth Court of Appeals is attached to this petition as Appendix A.

---

[1] CR at 8.
[2] CR at 19.
[3] CR at 69.

# ISSUES PRESTENTED

This Honorable Court is respectfully requested to review the following issues:

**First Ground for Review:**

The Ninth Court of Appeals erred in failing to apply the presumption of invalidity to Texas Penal Code Sec. 42.01(a)(8), which is a content-based restriction, and instead applied the usual standard of presumptive validity.

**Second Ground for Review:**

The Ninth Court of Appeals erred when it held that Texas Penal Code Sec. 42.01(a)(8) was not unconstitutionally overbroad in violation of the First Amendment. This finding was based upon the application of the incorrect presumption of validity instead of the presumption of invalidity.

**Third Ground for Review:**

The Ninth Court of Appeals erred when it held that Texas Penal Code Sec. 42.01(a)(8) was not void for vagueness in violation of the First Amendment. This finding was based upon the application of the incorrect presumption of validity instead of the presumption of invalidity.

This Honorable Court should review this matter because the Ninth Court of Appeals has decided an important question of state or federal law that has not been, but should be settled by the Court of Criminal Appeals.[4] The constitutionality of Section 42.01(a)(8) has never been challenged as a violation of the First Amendment. Further, this matter should be reviewed because the Ninth Court of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the

---

[4] Tex. App. Proc. Rule 66.3(b)

Supreme Court of the United States.[5] Specifically, the Ninth Court's decision conflicts with established First Amendment precedent that protects expressive conduct as speech. The stakes for firearms owners and in particular holders of a Texas License To Carry a handgun (LTC) have never been higher with regard to potential criminal prosecutions for doing nothing more than lawfully displaying their handguns when or where another person may subjectively find them "alarming." The Ninth Court of Appeals has failed to recognize the potential for abuse of Section 42.01(a)(8) due to its facial unconstitutionality. Merely displaying a firearm or other deadly weapon is an act of expressive conduct. Section 42.01(a)(8) is a content-based restriction on expressive activity. Therefore, the proper constitutional standard of review in this matter is strict scrutiny. Intermediate scrutiny does not apply because Section 42.01(a)(8) is not a time, place, and manner restriction, nor does it further a substantial government interest without significantly impairing First Amendment freedoms.

## FACTS

Derek Ty Poe owned a firearms accessories store in Parkdale Mall, Beaumont, Texas. On December 28, 2013, he was detained by Beaumont Police at the mall, for conduct that amounted to nothing more than walking to his own store while carrying his dinner and his rifle (used in his store for demonstrative purposes). The police

---

[5] Tex. App. Proc. Rule 66.3(c)

4

confiscated his rifle and thereafter filed a probable cause affidavit that resulted in the filing of an Information.[6] The hearing on Petitioner's habeas corpus application produced substantial facts for the record. These facts include live testimony and affidavits from individuals involved in the movement to legalize the "open carry" of handguns, who state that the display of firearms is done for free speech purposes in advocating for political change. The State produced no evidence to challenge, contradict, or discredit this evidence.

## ARGUMENT AND AUTHORITIES

Texas Penal Code Sec. 42.01(a)(8) criminalizes one who "displays a firearm or other deadly weapon in a public place in a manner calculated to alarm." The First Amendment seeks to protect speech and expressive conduct. However, as constitutional jurisprudence teaches, the First Amendment right is not absolute, and there are certain categories of speech or expressive conduct that are entitled to more protection than others.[7] Laws that restrict speech on the basis of its content are subject to strict scrutiny by the courts. Laws that restrict speech on the basis of its time, place and manner, or promote a substantial government interest that is unrelated to the suppression of and only incidentally to free speech are subject to intermediate scrutiny for the purposes of determining if it substantially burdens

---

[6] CR at 6.
[7] *Virginia v. Black*, 538 U.S. 343, 358 (2003).

5

protected speech.[8]    Lastly, there is speech that is not protected the First Amendment

and the legislature is allowed to regulate it.    However, even when attempting to

criminalize unprotected speech, õthe statute must be carefully drawn or be

authoritatively construed to punish only unprotected speechö [9] Examples of

unprotected speech include child pornography[10], fighting words[11], offers to engage

in illegal conduct,[12] and incitement to commit immediate lawless action.[13]    The

United States Supreme Court stated long ago:

> [A] function of free speech under our system of government is to invite
> dispute. It may indeed best serve its high purpose when it induces a
> condition of unrest, creates dissatisfaction with conditions as they are,
> or even stirs people to anger. Speech is often provocative and
> challenging. It may strike at prejudices and preconceptions and have
> profound unsettling effects as it presses for acceptance of an idea. That
> is why freedom of speech, though not absolute, is nevertheless
> protected against censorship or punishment, unless shown likely to
> produce a clear and present danger of a serious substantive evil that
> rises far above public inconvenience, annoyance, or unrest.    There is
> no room under our Constitution for a more restrictive view.[14]

The expressive conduct of displaying a firearm or other deadly weapon, even while

alarming to others is protected and does not fall into any of these categories of

unprotected speech.

---

[8]  *Ex Parte Thompson*, 442 S.W.3d 325, 344 (Tex. Crim. App. 2014).
[9]  *Morehead v. State*, 807 S.W.2d 577, 580 (Tex. Crim. App. 1991) *citing Gooding v. Wilson*, 405 U.S. 518, 521-22 (1972).
[10]  *New York v. Ferber*, 458 U.S. 747 (1982).
[11]  *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942).
[12]  *United States v. Williams*, 553 U.S. 285 (2008).
[13]  *Brandenburg v. Ohio*, 395 U.S. 444 (1969).
[14]  *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949).

The Supreme Court's modern approach to First Amendment challenges to penal statutes restricting speech is a three-step inquiry:

1. *Does the statute restrict speech, including expressive conduct, based on its content?* If the answer is "yes," then the statute is presumed to be unconstitutional, the State has the burden of proving otherwise, and the court must then ask...

2. *Does the restricted speech fall entirely into a category of unprotected speech?* If the statute forbids *only* unprotected speech, the First Amendment is satisfied and not violated. However, if the statute captures protected speech along with unprotected speech, then...

3. *Does the statute satisfy strict scrutiny?* That is, is it necessary and narrowly written to satisfy a compelling state interest?[15]

This strict scrutiny approach, with a presumption of invalidity and the burden associated with it on the State, is the appropriate standard of review.[16] "Content-based regulations are presumptively invalid, and [i]t is rare that a regulation restricting speech because of its content will ever be permissible."[17] "[W]hen a statute is content based, it may be upheld only if it is the least restrictive means of achieving the compelling government interest in question."[18] Expressive conduct, also known as "symbolic speech," is protected like any other kind of speech. Texas Penal Code Sec. 42.01(a)(8) is a content-based regulation of protected expressive

---

[15] *See generally United States v. Alvarez*, ___ U.S. ___, 132 S.Ct. 2537 (2012).

[16] *See Ashcroft v. ACLU,* 542 U.S. 656, 660 (2004).

[17] *Ex Parte Thompson*, 442 S.W.3d at 348 (*quoting Brown v. Entertainment Merchants Ass'n*, 564 U.S. _____, 131 S.Ct. 2729, 2738 (2011) (*quoting United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 818 (2000)).

[18] *Id.*

speech that does not pass the First Amendment's strict scrutiny test in that it is unconstitutionally vague and overbroad.

**First Ground for Review:**

The Ninth Court of Appeals erred in failing to apply the presumption of invalidity to Section 42.01(a)(8), which is a content-based restriction, and instead applied the usual standard of presumptive validity.

The opinion of the Ninth Court of Appeals reaches two conclusions in this case. First, that Section 42.01(a)(8) "punishes conduct rather than the content of speech alone;"[19] and second, that Section 42.01(a)(8) "bears a rational relationship to the State's legitimate and compelling interest in protecting its citizens from potential harm."[20] The Ninth Court is in error because it failed to follow the precedence set by this Court and consider that expressive conduct is speech for First Amendment purposes.[21] The Ninth Court's erroneous conclusion that Section 42.01(a)(8) regulates conduct allowed it to use the incorrect standard to determine the statute's constitutionality. The correct conclusion is that in this case, the conduct (displaying a firearm or other deadly weapon) is expressive conduct and is therefore speech.

It is true that in most cases where the facial constitutionality of a statue is at issue that, "[t]o prevail on a facial challenge to the constitutionality of a statute, a

---

[19] Appendix A, at 11.
[20] *Id.* at p. 11-12.
[21] *See Ex Parte Thompson*, 442 S.W.3d 325 (Tex. Crim. App. 2014) and *State v. Johnson*, 475 S.W.3d 860 (Tex. Crim. App. 2015).

party must establish that the statute always operates unconstitutional in all possible circumstancesö [22] however, this is not the constitutional standard in First Amendment cases. The Ninth Courtøs opinion begins its analysis by quoting the correct standard as expressed in *Ex Parte Lo*:

> The burden normally rests upon the person challenging the statute to establish its unconstitutionality. [W]hen the government seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed. Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed) are presumptively invalid, and the government bears the burden to rebut the presumption.ö[23]

The Court then ignores the analysis and ultimate holding in *Lo* and instead focuses on dicta to conclude that the mere display of a deadly weapon is conduct and therefore subject to the constitutional standard that presumes a statuteøs validity.[24]

The Ninth Courtøs opinion holds that the display of a firearm or other deadly weapon, is conduct and not an act of expressive speech. However, this Court has recently addressed the issue of conduct versus speech in *Ex Parte Thompson*, and *State v. Johnson*. These two cases deftly tackle the issue of determining when conduct that is not inherently expressive is still protected by the First Amendment. The unescapable similarity to the issue at hand in this case dictate that the conduct

---

[22] *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013).
[23] Appendix at 9, *quoting Ex Parte Lo*, 424 S.W.3d 10, 14-15 (Tex. Crim. App. 2013).
[24] *Id*.

of displaying a firearm or other deadly weapon should be analyzed under the same scheme.

This Court in *State v. Johnson*, held that the Texas flag desecration statute is unconstitutional and, stated:

> The Supreme Court has recognized that the conduct of intentionally or knowingly damaging a United States flag is not inherently expressive. As a result, a statute that proscribes such conduct will at least theoretically apply to some circumstances that do not implicate the First Amendment. The question is whether the applications of such a statute that do implicate (and violate) the First Amendment are so substantial that the statute must be held invalid on its face.[25]

This Court applied strict scrutiny to Texas Penal Code Sec. 42.11, because even though the destruction or abuse of a flag is not inherently expressive, there are substantial expressive acts involving the desecration of a flag so that the statute was declared unconstitutional. If conduct is not inherently expressive, the test to determine if the conduct is in fact protected expressive speech is set forth in *Thompson*. Conduct that is not inherently expressive implicates the First Amendment if: (1) there was an intent to convey a particularized message, and (2) the likelihood was great the message would be understood by those who viewed it.[26]

The Ninth Court's opinion mentioned yet ignored evidence that was presented during the hearing that on several occasions firearms were õdisplayedö in public

---

[25] *Johnson*, 475 S.W.3d at 873.
[26] *Thompson*, 442 S.W.3d at 334.

10

places as an essential element of a political protest, thereby showing that displaying a firearm is expressive conduct in those situations. the record contains evidence, including the testimony ô live and by affidavit, from Terry Holcomb and Christopher Grisham ô illustrated, many people engaging in political demonstrations with firearms have been subject to arrests and threats of arrest for disorderly conduct under Section 42.01(a)(8).[27] Under the *Thompson* criteria, the display of a firearm can be intended to express a particularized message; in fact it was political demonstrations of the display of firearms that helped persuade the 84th Texas Legislature to legalize õopen carryö of a handgun by license holders.[28]

The conduct of displaying a weapon is as expressive and õalarmingö as black arm bands,[29] offensive clothing,[30] or burning the United States flag.[31] Section 42.01(a)(8) regulates expressive speech (the display of a firearm) based upon its content (a manner calculated to alarm). This content regulation is unconstitutional because its language, specifically õdisplayed in a manner calculated to alarm,ö is vague and overbroad. Section 42.01(a)(8) does not regulate where or when a deadly weapon can be displayed but instead makes a value judgment as to which displays

---

[27] *See* RR Vol. 1, p. 9, lines 8-23; CR Vol. 1, p. 60-65.
[28] The most relevant part of HB910 was the amendment to Texas Penal Code Sec. 46.15(b)(6) that creates an exception to Texas Penal Code Sec. 46.02, for visible handguns carried in belt or shoulder holsters by handgun license holders.
[29] *Tinker v. Des Moines Independent School District*, 393 U.S. 503 (1969).
[30] *Cohen v. California*, 403 U.S. 15 (1971).
[31] *Texas v. Johnson*, 491 U.S. 397 (1989).

of firearms or other deadly weapons are lawful and which are unlawful. Therefore, it is a regulation of a substantial amount of expressive conduct based upon its content.

Intermediate scrutiny does not apply to this case because the statute is not a content-neutral time, place, or manner restriction. As this Court stated in *Ex Parte Thompson*, õGenerally, a law is considered to be Content based if it distinguishes ÷favored speech from disfavored speech on the basis of the ideas or views expressed.ø÷If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content-based.øö[32] This Court then uses the following example to illustrate its point, õFor example, a statute that prohibits an adult from communicating with a minor via the internet is content-neutral, but a statute that prohibits an adult from communicating with a minor via the internet in a sexually explicit manner is content-based.ö[33] An otherwise content-neutral restriction may be rendered content-based if it discriminates because of the intent of the speech.[34]

The conduct regulated by Section 42.01(a)(8) is very analogous to the

---

[32] *Thompson*, 442 S.W.3d at 345 (Tex. Crim. App. 2014) (*quoting Turner Broadcasting System v. Federal Communications Commission*, 512 U.S. 622, 643 (1994) *and Ex Parte Lo*, 424 S.W.3d 10, 15 n.12 (Tex. Crim. App. 2013)).

[33] *Id.*

[34] *Id.*, 442 S.W.3d at 347 (Tex. Crim. App. 2014) (holding that a portion of Section 21.15 of the Texas Penal Code was content-based because it discriminated on the basis of the underlying sexual thought).

communication this Court used as an example in *Thompson*. If the statute prohibited all displays of deadly weapons, including firearms, it would be content neutral. Since the statute only prohibits displays that are done in a manner calculated to alarm, it regulates the content of the display. For instance, Texas Penal Code Sec. 46.03 (Places Weapons Prohibited) and Texas Penal Code Sec. 46.035 (Unlawful Carrying of Handgun by License Holder) contain several places where the possession and display of firearms, illegal knives, clubs, and prohibited weapons, is illegal without regard to why they are carried or displayed. Because Section 42.01(a)(8) allows only certain types of displays of firearms or other deadly weapons to be communicated in a public place, it is a content-based regulation and therefore intermediate scrutiny does not apply.

**Second Ground for Review:**

> The Ninth Court of Appeals erred when it held that Texas Penal Code Sec. 42.01(a)(8) was not unconstitutionally overbroad in violation of the First Amendment. This finding was based upon the Court's application of the incorrect presumption of validity instead of the presumption of invalidity.

If the Ninth Court had applied the correct constitutional standard when judging the constitutionality of Section 42.01(a)(8), the statute would have failed as being overbroad. This Court recently quoted the United States Supreme Court as stating, õThe first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing

13

what the statute covers."[35] Section 42.01(a)(8) prohibits the intentional or knowing display of a firearm or other deadly weapon in a public place in a manner calculated to alarm. The statute contains no definitions, qualifications, exceptions, or defenses. The only limitation to the statute prohibiting *every* display of a firearm or other deadly weapon, is that only the displays "calculated to alarm" are prohibited. The statute fails to detail what "calculated to alarm" actually means. Under Section 42.01(a)(8), a person could be accused and convicted of displaying a firearm or other deadly weapon in a manner calculated to alarm based solely on the location of the display without regard to how the firearm or other deadly weapon was actually displayed or the purpose of the individual displaying it. Section 42.01(a)(8) allows the police and prosecutors to make assumptions about the person's intent without regard to specific conduct, and to base arrests and prosecutions on those assumptions, about where and under what circumstances a display can be made, including when they are considered "inherently alarming."[36] A detention, arrest, and prosecution can be done without any prior notice or guidance to a person who is doing nothing more than legally carrying a visible firearm in a public place.

Because Section 42.01(a)(8) is challenged on First Amendment grounds, it may be declared unconstitutional on its face, even if it may have some legitimate

---

[35] *Johnson*, 475 S.W.3d at 871, *citing United States v. Williams*, 553 U.S. 285, 293 (2008).
[36] This reference is made in response to the State's Brief to the Ninth Court at page 13, when it contended that some displays of deadly weapons should be considered "inherently alarming" based solely on where the display occurs.

application and even if the parties before the court were not engaged in activity protected by the First Amendment.ö[37] Therefore, any arguments supporting the assertion that Section 42.01(a)(8) may have some legitimate applications or that Derek Ty Poe was not actually engaged in First Amendment activities because he was in a shopping mall when he was accused of disorderly conduct, are not determinative to the analysis of facial constitutionality. If a statute is overbroad to the extent that it impedes or implicates substantial protected First Amendment activity then it is unconstitutional.[38] A statute is not unconstitutionally overbroad if it is narrowly tailored so that it prohibits certain conduct without prohibiting constitutionally protected conduct.[39] If a statute substantially impairs protected speech, it is unconstitutional even if it justifiably prohibits unprotected speech. Recently the Texas Court of Criminal Appeals stated, õAccording to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a ‑substantialø amount of protected speech ‑judged in relation to the statuteøs plainly legitimate sweep.ø The State may not justify restrictions on constitutionally *protected* speech on the basis that such restrictions are necessary to effectively suppress constitutionally *unprotected* speech...ö[40]

---

[37] *Johnson,* 475 S.W.3d at 865, *citing United States v. Stevens*, 559 U.S. 460, 473 (2010).
[38] *See Ex Parte Thompson*, 442 S.W.3d 325 (Tex. Crim. App. 2014) and *Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013).
[39] *See Bynum v. State*, 767 S.W.2d 769, 772 (Tex. Crim. App. 1989) (*citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1981)).
[40] *Lo*, 424 S.W.3d at 18 (Tex. Crim. App. 2013) (*citing Virginia v. Hicks*, 539 U.S. 113, 118-19

Section 42.01(a)(8) is not narrowly drawn because it overlaps numerous Texas Penal Code statutes that prohibit specific dangerous or unsafe conduct involving firearms and other deadly weapons. For instance, Section 22.02 criminalizes exhibiting a firearm during the course of an assault; Section 22.05(a) prohibits recklessly pointing a firearm in the direction of another; Section 22.05(b) prohibits knowingly discharging a firearm in the direction of persons, habitations, buildings, or vehicles; Section 22.07 prohibits threatening to commit any offense involving violence; Section 42.12 prohibits recklessly discharging a firearm in a city of over 100,000 people; Section 42.01(a)(7) prohibits intentionally discharging a firearm in a public place; Section 42.01(a)(9) prohibits intentionally discharging a firearm across a public road; Sections 46.03 and 46.035 criminalize carrying a firearm into specific prohibited locations. The fact that all other dangerous or unsafe conduct with a firearm is regulated and prohibited by other penal statutes, means that the only conduct that Section 42.01(a)(8) actually criminalizes that the others do not, are First Amendment activities.

The Ninth Court's conclusion that Section 42.01(a)(8) õbears a rational relationship to the State's legitimate and compelling interest in protecting its citizens from potential harmö[41] is not only unsubstantiated but also undermined because of

(2003) and *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 235 (2002) *emphasis in original*.)

[41]  Appendix A, at 11-12.

the existence of these other laws. All of the aforementioned statutes are drafted to prohibit very specific harmful conduct with a firearm. Conversely, Section 42.01(a)(8) is a broad catch-all that allows for the criminalization of the conduct of displaying a firearm or other deadly weapon and is not based upon the inherent danger or unsafe manner of the display, but rather based on the subjective feelings of whether another person may find the display of a firearm to be alarming and contact the police.

**Third Ground for Review:**

> The Ninth Court of Appeals erred when it held that Texas Penal Code Sec. 42.01(a)(8), was not void for vagueness in violation of the First Amendment. This finding was based upon the application of the incorrect presumption of validity instead of the presumption of invalidity.

The Ninth Court goes to great length to point out that the statute focuses on the culpable mental state of the actor; in fact the Court states that in order to convict a person under this statute, the State must prove not only that the actor's display was intentional but must prove beyond a reasonable doubt that the actor displayed the deadly weapon with the particular intent to cause alarm;[42] as if this issue of intent lessens the statute's vagueness. This illustrates just how vague the statute actually is. Even with this specific-intent requirement, the statute does not meet the standards of the well-established constitutional *Grayned/Long* test for vagueness. As this Court stated, a statute is void for vagueness if it "either forbids or requires the doing

---

[42] *Id.* at 13.

of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application.ö[43]

Statutes that impact First Amendment freedoms demand greater specificity than laws that do not. A law must be clearly written so that it establishes determinate, explicit guidelines for law enforcement to prevent arbitrary arrests and enforcement, and it does not have a chilling effect on protected freedom of expression.[44] This Courtøs opinion in *Long v. State*, while quoting the Supreme Court and the Fifth Circuit Court of Appeals, states:

> When a statute is capable of reaching First Amendment freedoms, the doctrine of vagueness õdemands a greater degree of specificity than in other contexts.ö Greater specificity is required to preserve adequately the right of free expression because õ[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone that if the boundaries of the forbidden areas were clearly marked.ö Moreover, when a vagueness challenge involves the First Amendment considerations, a criminal law may be held facially invalid even though it may not be unconstitutional as applied to the defendantøs conduct.[45]

This Court used *Long* to set forth the test to determine if a statute is unconstitutionally vague:

É First, a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited;

---

[43] *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979).

[44] *Long v. State*, 931 S.W.2d 285, 287-88 (Tex. Crim. App. 1996) (*citing Grayned v. Rockford*, 408 U.S. 104 (1972) and *Kramer v. Price*, 712 F.2d 177 (5th Cir. 1983)).

[45] *Id.* 931 S.W.2d at 287-288, (*quoting Graynard v. Rockford*, 408 U.S. 104, 109 (1972) and *Kramer v. Price*, 712 F.2d 174, 177 (5th Cir. 1983)).

● Second, the law must establish determinate guidelines for law enforcement;

● Finally, where First Amendment freedoms are implicated, the law must be sufficiently definite to avoid a chilling protected expression.[46]

Therefore, in order to survive a constitutional challenge, a statute must meet each of these requirements. Failing to meet even a single prong of this test from *Long* renders the statute unconstitutional.

The operative term of Section 42.01(a)(8), "manner calculated to alarm" is entirely subjective and allows the police and prosecutors to act arbitrarily and selectively as to which people who are displaying deadly weapons will be arrested and which ones will not.

The Ninth Court ignored the fact that this Court has twice clearly and explicitly stated that the term "alarm" is inherently vague.[47] Since the word "alarm" is the gravamen of Section 42.01(a)(8), it is important that the statute define, limit, or qualify its meaning and application in order to lessen its inherent vagueness. Section 42.01(a)(8) does none of this. As this Court has stated, "[t]he court further explained that a statute's vagueness is not lessened by making the conduct dependent upon each complainant's sensitivities. Finally, the court held that the intent

---

[46] *Id.* 931 S.W.2d at 287.

[47] *See May v. State,* 765 S.W.2d 438, 440 (Tex. Crim. App. 1989); *Long v. State,* 931 S.W.2d 285 (Tex. Crim. App. 1996). The Texas Court of Criminal Appeals took its guidance from the federal Fifth Circuit in *Kramer v. Price*, 712 F.2d 174, 177-178 (5th Cir. 1983), who declared that the word "alarm" in the Texas harassment statute was inherently vague.

requirement did not save the statute because the underlying conduct was still vague."[48]

The reason that criminal laws must be clearly stated is because the criminal justice system requires that the citizens, police, prosecutors, and ultimately jurors be provided definitive guidelines to distinguish between acts of criminal conduct and the hundreds of acts of non-criminal conduct that may arise from similar circumstances. As the State's brief to the Ninth Court clearly acknowledges, "There are *infinite ways* to display a firearm or other deadly weapon."[49]  It is possible that every single one of these "infinite ways" could be described as "a manner calculated to alarm," if so then the statute acts as a complete prohibition of the constitutional and statutory right to wear, bear, and carry arms, for all purposes including those protected by the First Amendment. The State has argued in its brief that carrying and displaying a semi-automatic firearm in a public place, such as a mall, is "inherently alarming."[50]  However, on January 1, 2016, a handgun license holder's display of holstered semi-automatic handguns in public places, such as malls, became legal under Section 46.15(b)(6). If it is "inherently alarming" as the State argues, then this means that any handgun license holder who lawfully displays a handgun in a belt or shoulder holster in a mall or other public place, has therefore done so in a manner

---

[48]  *Long,* 931 S.W.2d at 288.
[49]  State's Brief to the Ninth Court, at 7 (emphasis added).
[50]  *Id*. at 13.

"calculated to alarm." It is this kind of sweeping application of Section 42.01(a)(8) due to its vague language that illustrates that the law is unconstitutional.

It is important to remember that constitutional jurisprudence requires that "when a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid even though it may not be unconstitutional as applied to the defendant's conduct."[51] This means that even if Petitioner was not exercising his First Amendment freedoms when he walked through a mall with a rifle safely slung across his back, Section 42.01(a)(8) can be facially unconstitutional because it can be used against people who are displaying firearms as an act of clearly First Amendment expression. Specifically, the people described in the testimony of Terry Holcomb, the affidavit of Christopher Grisham, and the news stories entered into evidence by Derek Ty Poe's trial counsel.[52]

## CONCLUSION

The Court of Criminal Appeals should grant this petition to review the constitutionality of Section 42.01(a)(8). This statute only criminalizes the protected expressive conduct of displaying a deadly weapon because other existing Texas statutes regulate unsafe conduct with a deadly weapon. Section 42.01(a)(8) is overbroad and vague so that it does not provide a potential defendant or jury, being

---

[51] *Long*, 931 S.W.3d at 288.
[52] CR at 31-66.

of ordinary intelligence, with any guidance as to what conduct is prohibited. Further, the language of Section 42.01(a)(8) provides too much discretion, allowing law enforcement and prosecutors to act arbitrarily and without notice, and therefore unconstitutionally infringes on rights protected by the First Amendment.

## PRAYER

Derek Ty Poe prays that this Honorable Court grant discretionary review in this matter due to the errors of the Ninth Court of Appeals and order that the issues cited herein be briefed, oral argument be heard, and thereafter find that Texas Penal Code Sec. 42.01(a)(8) is facially unconstitutional.

/s/ T. Edwin Walker
T. EDWIN WALKER
State Bar No. 00786324
1020 Bay Area Blvd., Suite 216
Houston, Texas 77058
Tel: (281) 668-9957
Fax: (281) 282-9419
Email: tewalker@walkerbyington.com
ATTORNEY FOR DEREK TY POE

**CERTIFICATE OF SERVICE**

This certifies that on June 20, 2016, a true and correct copy of the foregoing motion was served upon the Jefferson County District Attorney's Office via Jefferson County Assistant District Attorney, Wayln G. Thompson through electronic service at his email address, thompson@co.jefferson.tx.us.

/s/ T. Edwin Walker

T. Edwin Walker

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in Times New Roman, a conventional typeface, no smaller than 14 point for text and 12 point for footnotes. This document also complies with the word count limitations of Tex. R. App. R. 9.4(i) because it contains 4,490 words, excluding parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/ T. Edwin Walker

T. Edwin Walker

# APPENDIX A

Opinion of the Ninth Court of Appeals in No. 09-15-00373-CR

*Ex Parte Derek Ty Poe*

# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-15-00373-CR
_____

### EX PARTE DEREK TY POE

═══════════════════════════════════════════════

**On Appeal from the County Court at Law No. 2**
**Jefferson County, Texas**
**Trial Cause No. 301268-A**

═══════════════════════════════════════════════

### OPINION

Derek Ty Poe was charged by information with the misdemeanor offense of disorderly conduct. *See* Tex. Penal Code Ann. § 42.01(a)(8) (West Supp. 2015). Poe filed an application for pretrial writ of habeas corpus, in which he contended that the disorderly conduct statute is facially unconstitutional due to its alleged vagueness and its alleged infringement upon his rights under the First, Second, Fifth, and Fourteenth Amendments to the United States Constitution and Article I, sections 8, 10, 19, and 23 of the Texas Constitution. *See* Tex. Penal Code Ann. §

1

42.01(a)(8).[1] After conducting an evidentiary hearing, the trial court denied Poe's application. In two appellate issues, Poe challenges the trial court's denial of his habeas application. We affirm the trial court's order denying habeas relief.

BACKGROUND

The State charged Poe with disorderly conduct. Specifically, the State contended that Poe "intentionally and knowingly display[ed] a deadly weapon, namely a firearm, in a public place and in a manner calculated to alarm[.]" Poe filed an application for pretrial writ of habeas corpus, in which he asserted that section 42.01(a)(8) of the Penal Code is unconstitutionally vague, overbroad, and violates his "constitutional rights to free speech and to bear arms[.]" Poe asserted that "the act of displaying a firearm is conduct protected by the First Amendment." Poe contended that the terms "displaying," "manner," "calculated," and "alarm" are undefined, rendering the statute vague and overly broad, and he argued that the statute fails to give a person of ordinary intelligence fair notice "that the statute

_____

[1]Although various subsections of section 42.01 have been amended or deleted since the statute was enacted on January 1, 1974, with the exception of being renumbered, the language of the current version of section § 42.01(a)(8) is identical to the language the Legislature used when that subsection was enacted. See Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, sec. 42.01(a)(9), 1973 Tex. Gen. Laws 883, 954 (current version at Tex. Penal Code Ann. § 42.01(a)(8) (West Supp. 2015)). Therefore, we cite to the current version of the statute.

2

outlaws certain conduct and therefore encourages the police and the prosecution to make arbitrary and erratic arrests and convictions."

According to Poe, the statute "provides no guidance or explanation as to what facts or circumstance[s] must exist in order to determine if a defendant's conduct was done with the specific intent showing that he calculated his display of a firearm to be alarming." Poe maintained that the statute fails to give a reasonable person guidance as to what specific conduct is prohibited, and the statute's deficiencies "prevent law enforcement from having clear guidance as to what conduct in displaying a firearm is criminalized as being 'a manner calculated to alarm.'" Poe also argued that section 42.01(a)(8) has a chilling effect on public displays of firearms as an exercise of First Amendment rights. In addition, Poe contended that the statute violates the fundamental rights of persons to keep and bear arms under the Second Amendment.

Poe attached three affidavits to his application. The affidavit of T. Edwin Walker, Poe's attorney, stated that Walker had done an internet search for protests and activities involving open display of firearms for First Amendment purposes, and he averred that the twenty-eight pages attached to his affidavit were true and correct copies of the original news articles as posted on the Internet. Terry Louis Holcomb averred in his affidavit that he is the Executive Director of Texas Carry,

3

Inc., a non-profit corporation that advocates for open carry of handguns. Holcomb explained in the affidavit that "we plainly communicated to the Texas Legislature that if they did not allow a vote on the bill for open carry of a handgun with a concealed handgun license, . . . we would put on our long guns and carry them all across Texas in protest of the restrictions on our handguns." According to Holcomb,

> [t]he sole purpose of openly carrying rifles and shotguns is to express our belief that people should be allowed to openly carry handguns. We are attempting to educate the public not alarm them. We have no intention to alarm anyone which is why all rifles and shotguns are displayed in a safe[,] non-threatening manner.

Holcomb further averred that in Texas, there have been eighteen arrests for openly carrying a rifle, shotgun, or "replica pre-1899 black powder pistol," without a single conviction. According to Holcomb, "[w]e are intimidated with threat of arrest and told we cannot openly carry rifles, shotguns, and replica pre-1899 black powder pistols because a person may find the mere display of them to be alarming." Christopher John Grisham averred in his affidavit that he is President and Founder of Open Carry Texas (OCT), a non-profit gun rights group. According to Grisham, "OCT members have been arrested more than two dozen times for the lawful carry of their firearms openly as an expression of our mission to educate Texans on gun rights and secure more meaningful legislation that

4

recognizes our right to keep and bear arms." Grisham averred that "citizens can be arrested for a mere complaint and claim that one is 'alarmed' and not because any actual crime was committed." According to Grisham, openly carrying long arms and pre-1899 antique or replica revolvers is

> immensely important as a [First] Amendment issue as it draws attention and encourages dialogue on our efforts. No single method of speech has been more successful for us than the open display of firearms in a peaceful and respectful manner than carrying these long arms. Signs and flags only draw attention to the protestor, not the cause.

Grisham stated that "the law creates different standards depending on the complainant's beliefs about guns in public."

In response to Poe's application, the State asserted that three days after Christmas 2013, during evening hours when Parkdale Mall was crowded, Poe "harnessed and shouldered an AR-15 223 Caliber Assault Rifle [] and began traversing the Mall. Mall patrons[] and store workers were horrified, and as a result, many calls were made to 911."[2] According to the State, when Beaumont police officers approached Poe, Poe "immediately became belligerent with the officers while espousing [his] Second Amendment Rights[,]" but Poe eventually

---

[2]The State's use of the language "assault rifle" to describe the AR-15 is, at best, inaccurate. These rifles are not capable of being fired in the automatic mode; the trigger must be pulled every time a bullet is fired. The "AR" designation references ArmaLite, the firearms manufacturing company that originally designed the AR-15.

5

gave the rifle to the officers. The State asserted that Poe revealed to the officers that he was walking around the mall simply to exercise his Second Amendment right. The State argued that section 42.01(a)(8) is not overly broad or unconstitutionally vague, and asserted that Poe's actions were "clearly calculated to cause fear and panic."

At the habeas hearing, Poe testified that he had served in the Army for four years, and at the time of the alleged offense, he owned a firearms accessory store called Golden Triangle Tactical, which was located in Parkdale Mall. Poe testified that he commonly carried his rifle from his home to his place of business at the mall. Poe testified that on the day of the incident in December 2013, he was carrying the rifle across his back, and he had a bag of food in one hand and a drink in the other hand. According to Poe, he was carrying the rifle in a safe manner, and he was not threatening anyone or presenting the rifle in a threatening manner. Poe testified that, based upon his experience in the military, whenever a threat is anticipated, a rifle is carried in front of the body in what is called the "low ready" stance "so we could bring it up to the high ready if we're ready to engage." According to Poe, if someone were walking in anticipation of using his rifle, he would not carry it across his back.

Poe explained that part of the reason he carries his rifle on his back is because he believes he has a First Amendment right to do so to advocate for his Second Amendment rights. According to Poe, whenever he is walking with his rifle on his back, he is expressing his belief in the Second Amendment. Poe testified that he also carries his rifle to protest restrictions on open carry of handguns. Poe testified that Parkdale Mall is owned by a private company, and he explained that prior to the incident that led to his being charged with disorderly conduct, Parkdale Mall's management and security guards had never told him not to bring his rifle into the mall.

Terry Holcomb Sr. testified that he is the executive director of Texas Carry, which he explained is "a Second Amendment gun rights policy group that works with the legislature to enact removing barriers for our Second Amendment rights." Holcomb testified that he engages in First Amendment activities as an advocate for firearms rights. According to Holcomb, some of Texas Carry's First Amendment activities involve walking while wearing long rifles or long shotguns. Holcomb explained that the purpose of carrying guns in that manner was to protest Texas's lack of an open carry law for handguns, and people who were doing so were anticipating that other people will see them. Holcomb testified that the purpose of displaying the firearms in such a manner is not to cause alarm, but to "educate the

7

Texas citizens to the absurdity of our current laws." According to Holcomb, displaying a rifle on a sling across someone's back or side is a safe, non-threatening means of displaying the gun.

Holcomb testified that activists against gun rights sometimes use the disorderly conduct statute against gun rights protesters by a practice called "swatting." Holcomb explained that swatting involves contacting law enforcement and reporting that someone protesting by wearing a gun is about to rob a store, waving the gun around, or doing something threatening. According to Holcomb, although swatting is a common practice, no protester has been convicted under the disorderly conduct statute. Holcomb testified, "we're all very much aware that if we try and express our protests [at the capitol in Austin] that they will arrest us." During cross-examination, Holcomb testified that someone exercising First Amendment rights cannot falsely shout the word "fire" in a crowded theater or the words "hijack" or "gun" on an airplane. Holcomb also explained that the owner of private property can prohibit the carrying of a firearm on his property.

## POE'S ISSUES

In his first issue, Poe argues that section 42.01(a)(8) of the Texas Penal Code "is unconstitutionally vague pursuant to the First, Second, Fifth, and Fourteenth Amendments to the United States Constitution." In his second issue, Poe argues

8

that section 42.01(a)(8) is unconstitutionally overbroad. We address Poe's issues together.

"Whether a statute is facially constitutional is a question of law that we review *de novo*." *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). We presume that a statute is valid and that the Texas Legislature did not act unreasonably or arbitrarily. *Id*. at 14-15. "The burden normally rests upon the person challenging the statute to establish its unconstitutionality." *Id*. at 15. "[W]hen the government seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed." *Id*. "Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed) are presumptively invalid, and the government bears the burden to rebut that presumption." *Id*.

Before a statute will be invalidated on its face as overbroad, the overbreadth must be real and substantial when "judged in relation to the statute's plainly legitimate sweep." *Id*. A statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional application. *See In re Shaw*, 204 S.W.3d 9, 15 (Tex. App.—Texarkana 2006, pet. ref'd). With respect to vagueness, statutes are not necessarily unconstitutionally vague merely because the words or terms employed in the statute are not specifically defined. *See Engelking*

9

*v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). When a statute does not define the words used therein, we will give the words their plain meaning. *See Parker v. State*, 985 S.W.2d 460, 464 (Tex. Crim. App. 1999); *see also* Tex. Gov't Code Ann. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). A statute will be invalidated if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *See State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006). We will not invalidate a statute for overbreadth "merely because it is possible to imagine some unconstitutional applications." *In re Shaw*, 204 S.W.3d at 15.

Because Poe makes a facial challenge to the statute, he must prove that the statute is unconstitutional in every application, and that the statute could never be constitutionally applied to any defendant under any set of facts or circumstances.[3] *See State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). As previously discussed, whether a statute is facially constitutional is a question of law that we review *de novo*. *Ex parte Lo*, 424 S.W.3d at 14; *Maloney v. State*, 294 S.W.3d 613, 626 (Tex.

---

[3]Poe has not made an 'as-applied' challenge; further, the factual development of the evidence in the record before us is insufficient to allow us to consider such a claim.

10

Crim. App. 2009). If we determine that there is a reasonable construction which will render the statute constitutional, we must uphold the statute. *Tarlton v. State*, 93 S.W.3d 168, 175 (Tex. App. – Houston [14th Dist.] 2002, pet. ref'd).

Section 42.01(a)(8) provides as follows: "A person commits an offense if he intentionally or knowingly . . . displays a firearm or other deadly weapon in a public place in a manner calculated to alarm[.]" Tex. Penal Code Ann. § 42.01(a)(8). The plain wording of section 42.01(a)(8) provides that the punishable conduct is the *intentional and knowing* display of a firearm in a public place, and the actor must display the firearm "*in a manner calculated to alarm*[.]" *Id.* (emphasis added). Section 42.01(a)(8) specifically includes a *mens rea*: it states the person must act *intentionally or knowingly* when he displays a firearm in a public place, and his displaying of the firearm must have been *calculated* to alarm. *Id.* The disorderly conduct offense defined by subsection (a)(8) is the *conduct* of displaying a firearm in a public place *in a manner calculated to alarm. See id.*

In this case, the charging instrument alleged that Poe "intentionally and knowingly displayed a deadly weapon, namely a firearm, in a public place and in a manner calculated to alarm[.]" We conclude that (1) the statute punishes conduct rather than the content of speech alone, and (2) the statute bears a rational relationship to the State's legitimate and compelling interest in protecting its

11

citizens from potential harm. *See Broadrick*, 413 U.S. 601, 615 (1973); *Ex parte Woodall*, 154 S.W.3d 698, 702 (Tex. App.—El Paso 2004, pet. ref'd) (holding that ordinance restricting smoking bears a rational relationship to interest in protecting general health, safety, and welfare); *see also Ex parte Lo*, 424 S.W.3d 10, 16-17 (noting the distinction between regulating speech versus regulating conduct).

Because section 42.01(a)(8) punishes conduct, we reject Poe's argument that we should analyze his appellate issues using the strict scrutiny standard of review. Accordingly, we begin by presuming that the statute is valid, and that the legislature did not act arbitrarily or unreasonably in enacting the statute. *Ex parte Lo*, 424 S.W.3d at 15.

As previously discussed, Poe asserts that the statute is "unconstitutionally vague because it does not give a reasonable person guidance as to what specific conduct is prohibited." Poe complains that the word "alarm" is "inherently subjective[,]" and he argues that "there is a great degree of variance of human perception of which conduct is alarming[.]" We begin by looking to the language of the statute and giving terms their plain meaning. *See Parker*, 985 S.W.2d at 464; *see also* Tex. Gov't Code Ann. § 311.011(a).

Although the statute does not define the terms "manner[,]" "calculated[,]" or "alarm[,]" we conclude that those words have commonly known and accepted

12

usage and meaning. "Manner" is defined as the "mode or method in which something is done or happens." WEBSTER'S THIRD NEW INT'L DICTIONARY 1376 (2002). "Calculated" is defined as "planned or contrived so as to accomplish a purpose or achieve an effect: thought out in advance: deliberately planned[.]" *Id.* at 315. "Alarm" is defined as "fear or terror resulting from a sudden sense of danger[.]" *Id.* at 48. We conclude that the statute describes the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. *See Holcombe*, 187 S.W.3d at 499. The statute's requirements that the display of a firearm be done intentionally or knowingly *and* in a manner calculated to alarm take the context of the actor's speech into question and require the State to meet a high burden of proving the requisite mental state. We conclude that the statute is reasonably related to the State's legitimate interest in protecting the public from harm. Poe has not satisfied his burden to prove that the statute is unconstitutionally vague, and we conclude that the statute provides fair notice of the prohibited conduct.

The United States Supreme Court has held that the overbreadth doctrine involves balancing the effects of the statute on protected speech with the otherwise legitimate and necessary prohibition of antisocial behavior that has been made criminal. *See United States v. Williams*, 553 U.S. 285, 292 (2008). The United

13

States Supreme Court held as follows: "In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. Invalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'" *Id*. (internal citations omitted). Section 42.01(a)(8) unambiguously provides that a person is prohibited from "intentionally or knowingly" displaying a weapon in a public place "in a manner calculated to alarm[.]" Tex. Penal Code Ann. § 42.01(a)(8).

We conclude that although there clearly are constitutional rights to bear arms and to express oneself freely, there is no constitutionally protected right to display a firearm in a public place *in a manner that is calculated to alarm*. In addition, we note that Poe's own evidence indicates that the statute is rarely employed against protesters and has not resulted in any convictions of protesters who are exercising their First and Second Amendment rights. The statute's plainly legitimate sweep bears a rational relationship to the State's interest in public safety and welfare. Accordingly, we overrule Poe's issues and affirm the trial court's order denying Poe's application for writ of habeas corpus.

14

AFFIRMED.

                                                  _____

                                                    STEVE McKEITHEN
                                                      Chief Justice

Submitted on December 23, 2015
Opinion Delivered April 20, 2016
Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

CONCURRING OPINION

In this pretrial habeas proceeding, Poe challenges section 42.01(a)(8)[1] of the disorderly conduct statute and argues that the statute is facially unconstitutional and unconstitutionally vague. I agree with the majority's conclusion to overrule Poe's facial constitutional challenges and his challenge that the statute is unconstitutionally vague. I write separately from the majority to clarify the basis for my conclusion that Poe has failed to meet his heavy burden to establish a facial challenge to the statute.

Facial Constitutional Challenges

A defendant may file a pretrial application for writ of habeas corpus in order to raise a facial challenge to the constitutionality of the statute under which the defendant is charged. *Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014). Whether a statute is facially unconstitutional is a question of law subject to *de novo* review. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When the constitutionality of a statute is attacked, a court usually must presume that the

[1] Tex. Penal Code Ann. § 42.01 (a)(8) (West Supp. 2015) (*see* Majority Opinion at n.1 for further reference). The relevant statutory language is as follows:
   § 42.01. Disorderly Conduct
      (a) A person commits an offense if he intentionally or knowingly:
      . . .
         (8) displays a firearm or other deadly weapon in a public place in a manner calculated to alarm[.]

1

statue is valid and that the Legislature has not acted unreasonably or arbitrarily. *Id.* at 15. With respect to constitutional provisions other than the First Amendment, a facial challenge to the constitutionality of a statute will succeed only if it is shown that the statute is unconstitutional in all of its applications. *State v. Johnson*, 475 S.W.3d 860, 864 (Tex. Crim. App. 2015). With respect to facial challenges that pertain to an activity or speech protected by the First Amendment, the challenger may also bring a "substantial overbreadth" challenge. *United States v. Stevens*, 559 U.S. 460, 473 (2010). Under the "substantial overbreadth" doctrine, the statute may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* The "substantial overbreadth" challenge may be made when a statute restricts or punishes speech based upon its content. *Ex parte Lo*, 424 S.W.3d at 15. There is no recognized application of the "substantial overbreadth" doctrine to any challenge outside of certain First Amendment challenges. *McGruder v. State*, 2016 Tex. Crim. App. LEXIS 36, *5 (Tex. Crim. App. 2016) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Briggs v. State*, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990); *State ex rel. Lykos v. Fine*, 330 S.W.3d at 904, 909 & n. 13. (Tex. Crim. App. 2011)).

The overbreadth doctrine is "strong medicine" that is used "sparingly and only as a last resort." *Johnson*, 475 S.W.3d at 865 (citing *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988); *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973); *Ex parte Thompson*, 442 S.W.3d at 349)). When making a "substantial overbreadth" challenge under the First Amendment, the challenger must establish that the statute as written "prohibit[s] a substantial amount of protected expression, and the danger that the statute will be unconstitutionally applied must be realistic and not based on 'fanciful hypotheticals.'" *Id.* (footnotes omitted) (quoting *Stevens*, 559 U.S. at 485 (Alito, J., dissenting)). Therefore, Poe must demonstrate "'that a substantial number of instances exist in which the Law cannot be applied constitutionally.'" *See id.* (quoting *New York Club Ass'n*, 487 U.S. at 14). "The Supreme Court generally does not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Id.* (quoting, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-450 (2008)).

## Poe's First Amendment Challenge

Poe argues that section 42.01(a)(8) is facially unconstitutional because the statute infringes upon his First Amendment[2] right to freedom of speech. While I agree with the majority that as written section 42.01(a)(8) appears to regulate conduct rather than speech, the display of a weapon could, in some instances, be connected to the exercise of free speech. Expressive conduct may, in some instances, run afoul of the First Amendment, and some statutes that prohibit such conduct may indeed be facially unconstitutional. *See, United States v. Eichman*, 496 U.S. 310 (1990); *Texas v. Johnson*, 491 U.S. 397 (1989); *State v. Johnson*, 475 S.W.3d at 882 ("[T]he Texas flag-destruction statute, by its text and in actual fact, prohibits a substantial amount of activity that is protected by the First Amendment, judged in relation to its legitimate sweep. Consequently, we hold that the Texas flag-destruction statute is facially invalid because it is unconstitutionally overbroad in violation of the First Amendment.").

On the other hand, not all types of speech or expressive conduct are protected by the First Amendment. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942) ("fighting words" constitute "no essential part of any exposition of

---

[2] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

ideas," and therefore are not protected by the First Amendment); *R.A.V. v. City of St. Paul,* 505 U.S. 377, __(1992) (Scalia, J., writing for the majority explained that "the exclusion of 'fighting words' from the scope of the First Amendment simply means that, for purposes of that Amendment, the unprotected features of the words are, despite their verbal character, essentially a 'nonspeech' element of communication. Fighting words are thus analogous to a noisy sound truck: Each is, as Justice Frankfurter recognized, a 'mode of speech,' [citation omitted] both can be used to convey an idea; but neither has, in and of itself, a claim upon the First Amendment.").

In *R.A.V. v. City of St. Paul*, the Supreme Court examined a statute that prohibited certain expressive conduct that included racially motivated cross burning or displays and behavior that the Supreme Court described as "reprehensible." 505 U.S. at 396. Therein, several teenagers, including the petitioner, allegedly assembled and burned a cross inside the fenced yard of a family that lived across the street from the petitioner. The City could have charged the petitioner with several different criminal violations, but petitioner was charged with a violation of the St. Paul "Bias-Motivated Crime Ordinance," St. Paul, Minn., Legis. Code § 292.02 (1990). According to the majority, even though the expression that was reached by the statute might be proscribable under the

5

"fighting words" doctrine, the court "nonetheless conclude[d] that the ordinance is facially unconstitutional in that it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses." *Id*. at 381.

Nevertheless, when the intent as outlined within a statute "is to do something that, if accomplished, would be unlawful and outside First Amendment protection, such as the intent to threaten or intimidate, such an intent might help to eliminate First Amendment concerns." *Ex parte Thompson*, 442 S.W.3d at 338. For example, in *Scott v. State*, 322 S.W.3d 662, 669-70 (Tex. Crim. App. 2010),[3] the Court of Criminal Appeals upheld the harassment statute section 42.07(a)(4), and concluded that the statute is not unconstitutionally vague and that it does not implicate the free speech guarantee under the First Amendment, as it is directed only at someone who with the specific intent to inflict emotional distress, repeatedly uses the telephone to invade the personal privacy of another person in a manner reasonably likely to inflict emotional distress. In contrast, in *Ex parte Thompson*, the Court of Criminal Appeals struck down the "Improper Photography or Visual Recording"

---

[3] In *Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014), the Court of Criminal Appeals disavowed a footnote contained in *Scott* which related to the term "repeated," and the Court provides further guidance on use of the phrase "repeated telephone communications." Justice Keller, joined by Justice Johnson, indicates that in light of the "abandonment of some of the rationales in *Scott*" the Court should, "when the issue is raised again, re-evaluate" its holding in *Scott*. *Id*. at 426-27 (Keller, J., concurring).

6

statute because "to the extent it proscribes the taking of photographs and the recording of visual images, [it] is unconstitutional on its face in violation of the Free Speech clause of the First Amendment." *See* 442 S.W.3d at 330, 351. The photography statute expressly covered all photographs other than those taken in a bathroom or private dressing room, and it was therefore "designed as a catch-all, to reach other situations in which photography and visual recordings ought to be prohibited." *Id.* at 349.

In comparison to the "Bias Motivated" statute in *R.A.V. v. City of St. Paul*, or the flag destruction statutes in *Texas v. Johnson* and *State v. Johnson*, and the photography statute in *Ex parte Thompson*, the statute that Poe is charged under is more analogous to the harassment statute in *Scott v. State*. Section 42.01(a)(8) does not prohibit a person from using a symbol as part of expressive conduct, does not prohibit "otherwise permitted speech solely on the basis of the subjects the speech addresses," and it does not act as a catch-all provision to reach expressive conduct. Rather, the plain language in section 42.01(a)(8) prohibits conduct that, if accomplished, would be unlawful and outside First Amendment protection, in that it criminalizes an intentional or knowing act that is done in a manner calculated to alarm, and would not be substantially protected by the First Amendment. Accordingly, I agree with the majority that the statute as written regulates conduct

7

and not speech. *See generally State v. Paquette*, No. 09-15-00361-CR, 2016 Tex. App. LEXIS 1858, at *7 (Tex. App.—Beaumont Feb. 24, 2016, no pet.) (discussing online solicitation provision and rejecting overbreadth challenge to Tex. Penal Code section 33.021(c) under the First Amendment); *Ex parte Victorick*, No. 09-13-00551-CR, 2014 Tex. App. LEXIS 5429, at **6-18 (Tex. App.—Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication), *cert. denied*, *Victorick v. Texas*, 135 S. Ct. 1557, 191 L. Ed. 2d 638 (2015).

Poe has failed to establish that the statute in question prohibits a substantial amount of activity that is protected by the First Amendment, judged in relation to its plainly legitimate sweep. Accordingly, I agree with the decision of the majority to overrule Poe's First Amendment challenge to the statute. We expressly do not decide whether the statute is unconstitutional *as applied* to Poe.[4]

---

[4] A facial challenge to the constitutionality of a statute must generally assert that there are no factual circumstances under which the statute would be constitutional. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 909 (Tex. Crim. App. 2011). When making a facial challenge, evidence regarding how the statute operates in practice is irrelevant. *Id*. at 908-09. In a facial challenge, we consider how the statute is written rather than how it operates or is applied in practice. *Salinas v. State*, 464 S.W.3d 363, 367 (Tex. Crim. App. 2015). The Court of Criminal Appeals has cautioned against the use of pretrial writs to adjudicate certain constitutional challenges. *See Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001) (pretrial habeas may not be available for "as applied" challenge but may be available when facial challenge to constitutionality of statute is made);

Poe's Second Amendment Challenge

With respect to Poe's challenge under the Second Amendment, in my opinion, the Court must analyze this challenge separately from the First Amendment because the "substantial overbreadth" doctrine would not apply to Poe's Second Amendment challenge.

The framers of the United States Constitution expressly recognized the right of the people to "keep and bear [a]rms[.]" *See* U.S. CONST. amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."). The Second Amendment extends to and protects an individual right to keep and bear arms and the Second Amendment is fully applicable to the States. *Caetano v. Massachusetts*, No. 14-10078, 2016 U.S. LEXIS 1862, at \*\*1-2 (March 21, 2016) (per curiam) (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010)).

---

*see also Ex parte Perry*, No. PD-1067-15, 2016 Tex. Crim. App. LEXIS 43, at \*\*7-8 (Tex. Crim. App. Feb. 24, 2016) (explaining in further detail instances where a pretrial habeas challenge might be available for particular "as-applied" challenges). I express no opinion as to an "as-applied" challenge, and note that a party generally has a different burden to establish an "as-applied" challenge. *See Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 272 (Tex. App.—Austin 2007, pet. denied) ("[A] party making an as-applied challenge need only show that the statute is unconstitutional because of the manner in which it was applied in a particular case." An as-applied challenge is "fact specific[.]").

9

In *Heller*, the United States Supreme Court held that the District of Columbia's statute that prohibited the possession of handguns in the home, as well as its provision requiring handguns to be inoperable if kept in the home, violated the right guaranteed to the individual by the Second Amendment to the Federal Constitution. 554 U.S. at 635. Nevertheless, as stated by Justice Scalia in the *Heller* majority opinion, the fundamental right secured by the Second Amendment is not unlimited.

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. [] For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. [] Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id*. at 626-27 (internal citations and footnote omitted).

The *Heller* majority explained that the ruling was consistent with the earlier case of *United States v. Miller*, 307 U.S. 174 (1939). *See id.* at 621-23. According to *Heller*, "*Miller* stands only for the proposition that the Second Amendment

right, whatever its nature, extends only to certain types of weapons." *Id*. at 623. In *Miller*, the defendant was charged with illegally possessing a short-barreled shotgun and the Supreme Court rejected his challenge that the state statute prohibiting the possession of such weapons was in violation of the right to "keep and bear arms" guaranteed by the Second Amendment. 307 U.S. at 175-77, 182-83. Nevertheless, it would be wrong to conclude that the scope of the Second Amendment applies only to those weapons useful in warfare. As noted by the *Heller* majority, there may be some weapons like machine guns, for example, that would be useful in warfare but are not typically possessed by law abiding citizens for law abiding purposes. 554 U.S. at 624. The majority concluded that the operative clause in the Second Amendment, "the right of the people to keep and bear Arms, shall not be infringed[,]" is not limited by the introductory or prefatory clause which references a "well regulated Militia[.]" *See id*. at 577-78. "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582. However, the majority emphasized that the right to "keep and bear arms" does not import a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *See id*. at 626.

11

In 2010, the United States Supreme Court held that the Second Amendment's protections apply fully to the states. *McDonald*, 561 U.S. at 750. In *McDonald*, the Supreme Court examined whether the Second Amendment applied to a Chicago law that banned handguns in the home. *Id.* at 750-53. The *McDonald* majority, authored by Justice Alito, stated:

> Two years ago, in *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), we held that [1] the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, and we struck down a District of Columbia law that banned the possession of handguns in the home. The city of Chicago (Chicago or City) and the village of Oak Park, a Chicago suburb, have laws that are similar to the District of Columbia's, but Chicago and Oak Park argue that their laws are constitutional because the Second Amendment has no application to the States. We have previously held that [2] most of the provisions of the Bill of Rights apply with full force to both the Federal Government and the States. Applying the standard that is well established in our case law, we hold that [3] the Second Amendment right is fully applicable to the States.

*Id*. at 749-50. The Supreme Court again noted, as previously discussed in *Heller*, the Second Amendment right to "keep and bear arms" is not unlimited and again referenced the "longstanding" regulations discussed in *Heller*. *McDonald*, 561 U.S. at 786 (citing *Heller*, 554 U.S. at 626-27).

In *Jackson v. City and County of San Francisco*, 135 S. Ct. 2799 (2015), in a 7-2 decision, the Supreme Court denied the petition for writ of certiorari wherein the petitioners sought to enjoin a San Francisco Police Code provision that

12

provides that no person shall keep a handgun within a residence owned or controlled by that person unless the gun is stored in a locked container or with a trigger lock, as well as other limitations.  In a dissent authored by Justice Thomas and joined by Justice Scalia, the dissent argued that the lower appellate court's decision was questionable, and the dissent would have granted the petition in light of *Heller*. 135 S. Ct. at 2799-2802 (Thomas, J., dissenting).

In *Friedman v. City of Highland Park*, 136 S. Ct. 447 (2015), in a 7-2 decision, the Supreme Court denied the petition for writ of certiorari and refused to review the ruling of the Seventh Circuit Court of Appeals upholding an ordinance in the City of Highland Park, Illinois, which included a ban on semiautomatic firearms such as the AR-15 rifle. In a dissent once again authored by Justice Thomas and joined by Justice Scalia, the dissent argued that the ban was directly in violation of *Heller*, and the dissent would have granted the petition. 136 S. Ct. at 447 (Thomas, J. dissenting). The dissent explained that law-abiding citizens carry and possess such weapons for self-defense and target shooting, and it should not matter whether law-abiding citizens might have other firearms they could use for such purposes. *Id*. at 448-50. Furthermore, the dissent noted there is a distinction between such firearms and sawed-off shotguns, which are not commonly used by law abiding citizens for lawful purposes. *Id*. at 449. The dissent stated "[i]f a broad

ban on firearms can be upheld based on conjecture that the public might *feel* safer (while being no safer at all), then the Second Amendment guarantees nothing." *Id.*

Most recently, in *Caetano v. Massachusetts*, in a *per curiam* decision, the Supreme Court followed *Heller*, and concluded that the Second Amendment applied to a Massachusetts law prohibiting the possession of stun guns. 2016 U.S. LEXIS 1862, at \*\*1-2. The Supreme Court held that the Second Amendment's protections include the right of an individual to carry a stun gun for self-defense. *Id.* at \*\*2-3. The Supreme Court reaffirmed its previous analysis in *Heller* that the Second Amendment protects the individual right to "keep and bear arms" even with respect to weapons like stun guns that were not traditionally used in warfare. *Id.*; *Heller*, 554 U.S. at 624-25.

*Heller*, when read in conjunction with *Caetano*, confirms that the Second Amendment right to keep and bear arms necessarily includes the individual right of law-abiding citizens to keep and bear arms (firearms and other weapons such as "stun-guns") for self-defense. *See Caetano*, 2016 U.S. LEXIS 1862, at \*\*2-3; *McDonald*, 561 U.S. at 749-50; *Heller*, 554 U.S. at 635.[5] Nevertheless, we also

_____

[5] Justice Thomas has also acknowledged that firearms such as "modern sporting rifles (*e.g.,* AR-style semiautomatic rifles)" are owned by many Americans "for lawful purposes like self-defense, hunting, and target shooting." *Friedman v. City of Highland Park*, 136 S. Ct. 447, 447-50 (2015) (Thomas, J. dissenting). In the case at bar, Poe was carrying an AR-15 rifle.

14

know that the Second Amendment right to "keep and bear arms" does not import a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. *Heller* expressly did not "undertake an exhaustive historical analysis [] of the full scope of the Second Amendment[.]" *Id*. Similarly, in the matter now before us, this Court need not engage in an exhaustive discussion regarding the full scope of the Second Amendment. Rather, the issue before us today is whether section 42.01(a)(8) of the disorderly conduct statute is facially unconstitutional under the Second Amendment.

The statutory provision that Poe challenges prohibits a person from "intentionally or knowingly . . . display[ing] a firearm or other deadly weapon in a public place in a manner calculated to alarm[.]" "[T]o prevail on a facial challenge" under the Second Amendment, Poe had the burden to "establish that the statute always operates unconstitutionally in all possible circumstances." *See State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). Poe has failed to establish that the statute on its face as written always operates in all possible circumstances to unconstitutionally infringe upon the rights guaranteed under the Second Amendment. *See Salinas v. State*, 464 S.W.3d 363, 367 (Tex. Crim. App. 2015). Therefore, I agree with the decision of the majority to overrule Poe's facial

15

challenge under the Second Amendment. We expressly do not decide whether the statute is unconstitutional *as applied* to Poe.[6]

<u>Poe's Challenge under the Fifth Amendment and State Constitution</u>

Poe fails to include any argument in his brief pertaining to his allegations that the statute is facially unconstitutional pursuant to the Fifth Amendment to the United States Constitution and he fails to include any specific argument regarding his claim under Article I, Sections 8, 10, 19 and 23 of the Texas Constitution.

The "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Conclusory arguments that cite no authority present nothing for our review. *See Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992); *Atkins v. State*, 919 S.W.2d 770, 774-75 (Tex. App.—Houston [14th Dist.] 1996, no pet.). Accordingly, I would also overrule Poe's challenge with respect to the Fifth Amendment, and Article I, Sections 8, 10, 19 and 23 of the Texas Constitution.

---

[6] See n.3.

16

I concur in the majority's decision to overrule Poe's issues and to affirm the trial court's order denying Poe's application for writ of habeas corpus.

_____
LEANNE JOHNSON
Justice

Concurrence Delivered
April 20, 2016

17